## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

---

SHALINUS PYE and RAISHA
LICHT individually and on behalf
of all others similarly situated,

JURY TRIAL DEMANDED

*Plaintiffs*,

Case No.

v.

FIFTH GENERATION, INC., a
Texas Corporation; MOCKINGBIRD
DISTILLERY CORP., a Texas Corporation,
and BERT BUTLER BEVERIDGE II, an
individual.

*Defendants.*

---

## CLASS ACTION COMPLAINT

Plaintiffs, Shalinus Pye and Raisha Licht, ("hereinafter collectively referred to as Plaintiffs"), individually, and on behalf of all other similarly situated persons (hereinafter "the Class"), by and through their undersigned counsel, bring this class action complaint against defendants, Fifth Generation, Inc., Mockingbird Distillery Corp., and Bert Butler "Tito" Beveridge, II (hereinafter collectively referred to as "Defendants" or "Fifth Generation").

### SUMMARY OF THE CASE

1.     Defendants, Fifth Generation, Inc., Mockingbird Distillery Corp., and Bert Butler "Tito" Beveridge, II produce a vodka sold under the brand name "TITO's HANDMADE VODKA"[1] (hereinafter "Vodka" or "Tito's Vodka").  Defendants distill, bottle, label, advertise and sell Handmade Vodka, though false advertising and deceptive trade practices.

---
[1] © 2014 TITO'S HANDMADE VODKA

2.      Through unlawful, deceptive and unfair trade practices, and false advertising and marketing, Defendants manufactured, marketed, and/or sold their "handmade" Vodka to consumers with the false representation that the Vodka was "handmade"[2] when, in actuality, the Vodka is made via a highly-mechanized process, which is devoid of human hands. There is simply nothing "handmade" about the Vodka, under any definition of the terms, because the Vodka is: (1) made from commercially manufactured "neutral grain spirit" ("NGS") that is trucked and pumped into Defendants' industrial facility; (2) distilled in a large industrial technologically advanced stills; and (3) produced and bottled in extremely large quantities (i.e., it is "mass produced"). The Vodka is sold through various retailers in Florida.

3.      Defendants attempts to maintain the fiction of being a small-batch brand despite the fact that Defendants' "handmade" Vodka has exploded from a single 16-gallon pot still in 1997, to a 26-acre operation that produced 850,000 cases in 2012, up 46% from 2011, drawing in an estimated $85 million in revenue.[3]

4.      Upon information and belief, Defendants may have actually produced "handmade" Vodka at some point in the past, in small batches using a single still made from two Dr. Pepper kegs and a turkey frying rig to cook bushels.  However, Defendants now produces its Tito's Vodka in massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour.  Yet, Defendants expressly states on the label of its product, in large prominent letters that the product is **"Handmade"** and **"Crafted in an Old Fashioned Pot Still by America's Original Microdistillery."**  Defendants sold more than 12 million bottles in 2012.

---

[2] The Oxford Dictionary defined the term "handmade" ad "[m]ade by hand, not by machine, and typically therefore of superior quality."
[3] http://www.forbes.com/sites/meghancasserly/2013/06/26/haunted-spirits-the-troubling-success-of-titos-handmade-vodka/

5.     Defendants knowingly and purposefully failed to disclose to its consumer that Tito's Vodka is not actually "handmade", as advertised on the product's label.  Defendants knowingly and purposefully failed to disclose to its consumer that Tito's Vodka is not "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery." To this day, Defendants has taken no meaningful steps to clear up consumers' misconceptions regarding its product.

6.     As a consequence of Defendants' unfair and deceptive practices, Plaintiffs, and members of the Class, have purchased Tito's Vodka under the false impressions that Defendants' product is of a higher quality, is handmade, is crafted in old fashioned pot stills, and is otherwise as advertised on the product's label.

7.     Significantly, **each** consumer has been exposed to the **same** material misrepresentations and/or omissions, which are prominently displayed on the product packaging for Tito's Vodka prior to purchasing the product.

8.     Defendants' "handmade" Vodka mislead consumers into believing the product is "handmade" when, in actuality it is not. Defendants mislead consumers into believing the product is made in "old fashioned pot stills," when, in actuality it is not.

9.      The definition of "food" under the Federal Food, Drug, and Cosmetic Act ("FDCA") includes "articles used for food or drink" and thus includes alcoholic beverages. *See* 21 U.S.C. 321(f).  As such, alcoholic beverages are subject to the FDCA adulteration and misbranding provisions, and implementing regulations, related to food. For example, manufacturers of alcoholic beverages are responsible for adhering to the registration of food facilities requirements in 21 CFR part 1 and to the good manufacturing practices in 21 CFR part 110  However, as reflected in the 1987 Memorandum of Understanding (MOU) between the

FDA and the Tobacco Tax and Trade Bureau's ("TTB") predecessor agency (ATF) TTB is

responsible for the promulgation and enforcement of regulations with respect to the labeling of

distilled spirits, wines, and malt beverages pursuant to the Federal Alcohol Administration Act.

10.     TTB's currently effective regulations are contained in Title 27, Chapter I, of the

Code of Federal Regulations (27 CFR).  27 U.S.C. § 205 prohibits unfair competition and

unlawful practices.  Specifically, §5.65 provides in part:

> (a) Restrictions. An advertisement of distilled spirits shall not contain:
> (1) Any statement that is false or untrue in any material particular, or that,
> irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the
> addition of irrelevant, scientific or technical matter tends to create a misleading
> impression.
> (4) Any statement, design, device, or representation of or relating to analyses,
> standards or tests, irrespective of falsity, which the appropriate TTB officer finds
> to be likely to mislead the consumer.
> (9)
>          (b) Statements inconsistent with labeling. (1) Advertisements shall not
> contain any statement concerning a brand or lot of distilled spirits that is
> inconsistent with any statement on the labeling thereof.
>                (2) Any label depicted on a bottle in an advertisement shall be a
> reproduction of an approved label.
>          (h) Deceptive advertising techniques. Subliminal or similar techniques are
> prohibited. "Subliminal or similar techniques," as used in this part, refers to any
> device or technique that is used to convey, or attempts to convey, a message to a
> person by means of images or sounds of a very brief nature that cannot be
> perceived at a normal level of awareness.

11.     Under Federal and Florida state law, products such as Defendants' "handmade"

Vodka is "misbranded" if the "labeling is false or misleading in any particular," or if it does not

contain certain information on its labeling. *See* 21 U.S.C. § 343(a); 27 U.S.C. § 205; Florida

Food Safety Act § 500 *et seq*.

12.     Further, any violation of the TTB's 27 U.S.C. § 205, and/or the Florida Food

Safety Act also constitutes a violation of Florida's Consumer Protection Statues §501.201-

§501.213, Florida Deceptive and Unfair Trade Practice Act, Breach of Express Warranty; Breach

of Implied Warranties for Merchantability and Usage of Trade Pursuant to §672.314 Florida

Statues, Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314, Negligence

and Unjust Enrichment. In this action, Plaintiffs asserts claims under these state statutes, as well

as under common law.

13.     For the reasons stated herein, Defendants' Tito's Vodka sold in the United States

is misbranded and illegal.

14.     Plaintiffs now seek to stop Defendants' unlawful conduct.

## PARTIES

15.     Plaintiffs are residents of Tallahassee, Florida.

16.     Plaintiff, Shalinus Pye, purchased more than $25.00 worth of Tito's Handmade

Vodka, a product manufactured by the Defendants, in Tallahassee or Leon Country within the

four years preceding the filing of this action (the "Class Period").  Plaintiff, Raisha Licht,

purchased more than $25.00 worth of Tito's Handmade Vodka, a product manufactured by the

Defendants, in Tallahassee or Leon Country within the Class Period.

17.     Defendant, Fifth Generation, Inc., is a corporation organized under the laws of

Texas with its principle place of business located at 12101 Moore Road, Austin, Texas, 78719.

18.     Defendant, Mockingbird Distillery Corp., is a corporation organized under the

laws of Texas with its principle place of business located at 12101 Moore Road, Austin, Texas,

78719.

19.     Defendant, Bert Butler "Tito" Beveridge II, is an individual, and whose official

title and capacity is of Chairman, President, Secretary, and Treasurer of Fifth Generation, Inc.,

and Mockingbird Distillery Corp., and whose individual registered address is 12101 Moore

Road, Austin, Texas, 78719.

20.     Defendants collectively produce, label, market, advertise, and sell the product described herein nationwide using its name, Tito's Handmade Vodka, including in this State, district, and division.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the class of Plaintiffs is a citizen of a State different form a defendants; and (3) the number of members of all proposed Plaintiffs classes in the aggregate is greater than 100.

22.     The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoings alleged herein occurred in Florida. Defendants also have sufficient minimum contacts with Florida, and have otherwise intentionally availed itself of the markets in Florida through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 139(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS RELEVANT TO ALL CLAIMS

**Defendants' Tito's Vodka is misbranded and illegal**

24.     All containers of Defendants' Tito's Handmade Vodka sold in the United States are misbranded and illegal.

25.     Their sale constitutes violations of TTB regulations, FDCA regulations, the Florida Food Safety Act, Florida's Consumer Protection Statues §501.201-§501.213, Florida Deceptive and Unfair Trade Practice Act pursuant to ("FDUTPA"), Florida Intentional False Advertising Statute §817.44, Breach of Express Warranty; Breach of Implied Warranties for Merchantability and Usage of Trade Pursuant to §672.314 Florida Statues, Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314, Negligence and Unjust Enrichment.

26.     Defendants knowingly and intentionally sold this misbranded product to consumers (including Plaintiffs) with the intent to deceive them.

27.     During the relevant statutory time period, Defendants manufactured, marketed, and/or sold Vodka with printed labels that prominently claimed the Vodka was "Handmade" and "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery."

28.     Because Defendants' Tito's Vodka containers falsely represents that the product is "handmade" or "crafted in an old fashion pot still," Tito's Vodka is misbranded under both TTB, FDCA and the Florida Food Safety Act.

29.     Had Plaintiffs known that Defendants' Vodka product was falsely represented as "handmade" or ""crafted in an old fashion pot still" they would not have purchased Defendants' Vodka.

30.      Had Plaintiffs known that Defendants' Vodka was an illegally sold product, they would not have purchased the product.

31.     Plaintiffs' reliance was reasonable.

32.     A reasonable consumer would have been misled by the Defendants' actions.

33.     With respect to Defendants' Tito's Vodka, Defendants have violated the TTB and FDCA and regulations promulgated thereunder.

34.     As a result, Defendants have violated the Florida Food Safety Act.

35.     *Inter alia,* Defendants have specifically violated the following Florida Food Safety Act provisions.

36.     Defendants have violated Florida Food Safety Act § 500.11(1)(f), because words, statements, or other information required pursuant to the Florida Food Safety Act to appear on the label or labeling are not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

37.     Defendants have violated Florida Food Safety Act § 500.04(1), which makes it unlawful to manufacture, sell, deliver, possess, hold, or offer to sell any misbranded food.

38.     Defendants have violated Florida Food Safety Act § 500.115, which make it unlawful to falsely or misleadingly advertise food.

39.     Plaintiffs' claims that Defendants' product label is misleading and deceptive do not seek to challenge the product's formal name and labeling in areas for which the Tobacco Tax and Trade Bureau's ("TTB"), or Food and Drug Administration ("FDA") has promulgated regulations implementing the Federal Food Drug and Cosmetic Act ("FDCA"). Plaintiffs' claims do not seek to contest or enforce the TTB, FDCA or FDA regulation requirements. Nor do Plaintiffs seek an interpretation of the TTB or FDA regulations. Instead, Plaintiffs' claims are predicated on the fact that the labeling is misleading and deceptive even if it complies with the minimum requirements set forth by the TTB and FDA regulations, as the TTB and FDA regulations simply set a "floor," or "minimum" requirements.  Indeed, compliance with the minimum requirements is necessary, but is not sufficient to determine if a product's label is false

and misleading, and simply does not provide a shield from liability. *See e.g., Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009).  Plaintiffs' state law claims do not seek to impose labeling requirements that are not identical to those required by federal regulation.

40.     Plaintiffs' state law claims are aimed at Defendants' intentional conduct of naming and labeling which are voluntary, and not specifically required conduct by the TTB or FDA regulations.  Defendants selected the name and label described herein in order to maximize the label's deceptive impact upon Plaintiffs and other consumers. Indeed, TTB and FDA regulations did not require Defendants to name its product "Tito's Handmade Vodka," as opposed to "Tito's Vodka" or myriad of other options. Nor did TTB or FDA regulations require Defendants to state its product is "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery."  Defendants made that decision because of its marketing strategy. Defendants' marketing misleads consumers into believing that its product is "handmade" and "crafted in old fashioned pot stills". Defendants' marketing campaign is designed to cause consumers to buy Tito's Vodka as a result of this deceptive message and Defendants have succeeded.

41.     Florida's safe harbor doctrine will not shield Defendants from liability.  Florida's safe harbor provision applies, "the relevant analysis…is whether…the moving party has demonstrated that a specific federal or state law affirmatively authorized it to engage in the conduct alleged…not whether [the plaintiffs] have demonstrated that [the defendants'] conduct violates a specific rule or regulation." *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (emphasis added). To succeed, Defendants must demonstrate that federal or state law permits the specific practice at issue; it is not sufficient for the defendants merely to show that the federal or state government, or an agency thereof, has regulated generally in the area. *See Peters v. Keyes Co.*,

No. 10-60162-CIV, 2010 WL 1645095, at *4 (S.D. Fla. Apr. 21, 2010).

42.     "Compliance with regulations does not immunize misconduct outside the regulatory scope." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc*., 133 F. Supp. 2d 162, 175 (E.D.N.Y. 2001); *accord Sclafani v. Barilla Am., Inc*., 796 N.Y.S.2d 548 (2005). As in *Sclafani*, some of the elements of the relevant packaging and labeling alleged to be deceptive fall outside the scope of the applicable federal regulations."  Making deceptive statements cannot be considered compliance with federal rules, regulations, and statutes.  *See People ex rel. Spitzer v. Gen. Elec. Co., Inc.,* 756 N.Y.S.2d 520, 524 (2003).

43.     Several courts in previous food labeling cases have held that the FDCA does not preempt state law claims based on requirements identical to FDA regulations.  In order "to escape preemption by the FDCA "[t]he plaintiff must be suing for conduct that violates the FDCA.  *See In re: Medtronic Inc., Sprint Fidelis Leads Prods. Liability Litig*., 623 F.3d 1200, 1204 (8th Cir. 2010); *Perez v. Nidek Co*., 711 F. 3d 1109, 1119 (9th Cir. 2013); *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806,814 (1997).  Similarly, TTB regulations do not preempt state law claims.

44.     Plaintiffs in instant action are suing for conduct that violates the TTB and FDCA, thus Plaintiffs' claims are not preempted.  However, Plaintiffs are not suing *because* Defendants' conduct violates the TTB or FDCA.  Plaintiffs allege that Defendants' conduct violates Florida state law and Plaintiffs' claims do not exist "solely by virtue of the TTB or FDCA."  Plaintiffs' state law claims do not obstruct federal regulation of food labeling.

**Purchasers of Misbranded Defendants' Tito's Vodka Have Been Injured**

45.     Plaintiffs read and reasonably relied on the labels as described herein when buying Defendants' Tito's Vodka.

46.     During the Class Period, Defendants manufactured, marketed, labeled and/or sold Vodka with printed bottle labels that also prominently claimed that the Vodka is "Handmade" and "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery." An exemplar image of the label is as follows:



47.     On information and belief, the vodka was made, manufactured and/or produced in "massive buildings containing then floor-to-ceiling stills and bottling 500 cases an hour"[4] using automated machinery that is the antithesis of "handmade" that is in direct contradiction to both the "Handmade" representation and the "Crafted in an Old Fashioned Pot Still" representation on the product. Discovery will further reveal the specific automated manner in which the Vodka is made.

---

[4] A 2013 article in Forbes magazine noted that the Forbes photographer was purposefully directed away by the Tito's brand manager from "massive buildings containing ten floor-to-ceiling stills and bottling 500 cases an hour and into the shack with the original still, cobbled from two Dr. Pepper kegs and a turkey-frying rig to cook bushels of corn into booze."

48.     Defendants marketed and represented to the general public that the Vodka was "Handmade" and, in doing so, concealed the highly automated nature of the Vodka manufacturing and bottling process. Defendants also concealed the fact that the Vodka is no longer made in old fashioned pot stills of the variety TITO'S proudly displayed in the 2013 Forbes article (i.e., in a shack containing a pot still cobbled from two Dr. Pepper kegs and a turkey-frying rig to cook bushels of corn).

49.     Consumers are particularly vulnerable to these kinds of false and deceptive labeling practices. Most consumers possesses very limited knowledge of the likelihood that products, including the Vodka at issue herein, that is claimed to be "handmade" is in fact mass produced in mass quantities.

50.     Consumers generally believe that "handmade" products are of higher quality than their non-handmade counterparts, and are produced in small batches by hand. Due to Defendants' scheme to defraud the market, members of the general public were fraudulently induced to purchase Defendants' Vodka at inflated prices. Florida laws are designed to protect consumers from this type of false representation and predatory conduct. Defendants' scheme to defraud consumers is ongoing and will victimize consumers each and every day until altered by judicial intervention

51.     Had Plaintiffs been aware of these material facts, they would not have bought Defendants' Tito's Vodka.

52.     As a result of Defendants' unlawful misrepresentations, Plaintiffs and millions of others in Florida and throughout the United States have purchased Defendants' Tito's Vodka.

53.     Defendants' labeling as alleged herein is intentionally and knowingly false and misleading, and was designed to increase sales of the Defendants by preying consumers.

54.     Defendants' voluntary misrepresentations are part of its systematic labeling practice, which is inherently deceptive.

55.     A reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase Defendants' Tito's Vodka.

56.     Plaintiffs' purchase of Defendants' Tito's Vodka damaged them.

57.     Such purchases damaged Plaintiffs because, *inter alia*, misbranded products are illegal and have no economic value.

58.     Such purchases damages Plaintiffs because, *inter alia,* Plaintiffs had cheaper alternatives available and paid an unwarranted premium for Defendants' Tito's Vodka.

59.     Plaintiffs purchased Tito's Vodka in Tallahassee, Florida within the Class Period. At the time of purchase, the product itself was prominently marked with a "handmade" label when in fact there was nothing "handmade" about the product. The product was also labeled as being "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery" when in fact there is nothing old fashioned about the current manufacturing process.

60.     When Plaintiffs and Class Members purchased the Tito's Vodka, they saw and relied upon the "Handmade" representation and "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery" represenation that is prominently displayed on all of Tito's Vodka products. This reliance on the product label to make their purchasing decision is typical of most Florida consumers.

61.     Plaintiffs and Class Members were deceived as a result of Defendants' false labeling. Their purchasing decisions were supported by the "handmade" representation made by Defendants, which is absent from most (if not all) of Defendants' competitors. Their purchasing decisions were further supported by the "crafted in an old fashioned pot still by America's

original microdistillery" representation which also is absent from most (if not all) of Defendants'

competitors.  "Plaintiffs believed at the time they purchased the Vodka that they were in fact

buying a high-quality product made by human hands that was not made in large industrial vats in

mass quantities, etc.

62.     Plaintiffs suffered an "injury in fact" because Plaintiff's money was taken by

Defendants' as a result of Defendants' false claims set forth on the offending product.

Furthermore, they suffered an "injury in fact" by paying a premium for a product believed to be

genuinely "Handmade," when it was not.  Plaintiffs and Class Members are entitled to monetary

damages.  Plaintiffs and Class Members were undoubtedly injured as a result of Defendants'

false "handmade" representations that are at issue in this litigation.

## CLASS ACTION ALLEGATIONS

63.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in Florida who, within the Class Period, purchased
> Tito's Handmade Vodka (the "Class").

64.     The following persons are expressly excluded from the Class: (1) Defendants and

their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from

the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned

and its staff.

65.     This action can be maintained as a class action because there is a well-defined

community of interest in the litigation and the proposed Class is easily ascertainable.

66.     **Numerosity:** Based upon Defendants' publicly available sales data with respect

to Tito's Vodka, it is estimated that the Class numbers is potentially in the millions, and the

joinder of all Class members is impracticable.

67.     **Common Questions Predominate:** The action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right to each Class member to recover. Questions of law and fact common to each Class member include, for example:

a.     Whether Defendants engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Defendants' Vodka sold to consumers;

b.     Whether the product at issue is  misbranded or unlawfully packaged and labeled as a matter of law;

c.     Whether Defendants made unlawful and misleading claims regarding Defendants' Vodka;

d.     Whether Defendants violated Florida's Consumer Protection Statues §501.201- §501.213, Florida Deceptive and Unfair Trade Practice Act, Florida Intentional False Advertising Statute §817.44, Breach of Express Warranty; Merchantability; Usage of Trade Pursuant to §672.314 Florida Statues, Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314, the Florida Food Safety Act; or the FDCA and regulations promulgated thereunder;

e.     Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

f.     Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class; and

g.     Whether Defendants was unjustly enriched by their deceptive practices.

68.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchase Defendants' products during the Class Period. Defendants' unlawful, unfair,

and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of each member of the Class were caused directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and a based on the same legal theories.

69.     **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharged those duties by vigorously seeking the maximum possible recovery for the Class.

70.     **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be

relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

71.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

72.     The prerequisites to maintaining a class action pursuant to Fed R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

73.     Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

74.     Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are typical of the Class members' claims. Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs' claims are typical and representative of the Class.

75.     There are no unique defenses which may be asserted against Plaintiffs individually, as distinguished from the Class. The claims of Plaintiffs are the same as those of the Class.

76.     No conflicts of interest exist between Plaintiffs and the other Class members.

Plaintiffs have retained counsel that is competent and experienced in complex class action

litigation. Plaintiffs and their counsel will fairly and adequately represent and protect the

interests of the Class.

77.     This class action is superior to any other method for the fair and efficient

adjudication of this dispute.

### CAUSES OF ACTION

### COUNT I

### VIOLATION OF FLORIDA CONSUMER PROTECTION STATUTES §501.201- §501.213, FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

78.     Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1 through 77 above as if fully set forth herein.

79.     Defendants' conduct constitutes unlawful business acts and practices.

80.     Defendants sold Tito's Vodka in Florida and throughout the United States during

the Class Period.

81.     Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful,"

"fraudulent" or "unfair" business act or practice and any false or misleading advertising. For the

reasons discussed above. Defendants have engaged in unfair, false, deceptive, untrue and

misleading advertising in violation of Florida Consumer Protection Statute §501 *et. seq.*

82.     The Florida Deceptive and Unfair Trade Practices Act also prohibits any "unfair

methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

practices in conduct of any trade or commerce." Defendants have violated §501.204's

prohibition against engaging in unlawful acts and practices by, *inter alia,* making the false and

deceptive representations, and also through their omissions of material facts, as set forth more

fully herein, and violating 21 U.S.C. § 205, 21 U.S.C. §342, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45 (a)(I), 49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A), and the common law.

83.     Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

84.     Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of The Florida Deceptive and Unfair Trade Practices Act §501.201-§501.213 *et seq.* in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributed to such conduct.

85.     As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers. Defendants' conduct constitutes violations of the public policies against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers as proscribed by Florida Deceptive and Unfair Trade Practices Act §501.201-§501.213.

86.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

87.     Defendants' claims, nondisclosures and misleading statements, as more fully set forth above and collectively as a scheme, were false, misleading and likely to deceive the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

88.     Defendants' deceptive conduct constitutes a prohibited practice, which directly and proximately caused and continues to cause substantial injury to Plaintiffs and the other Class

members. Plaintiffs and Class members have suffered injury in fact, actual damages, and have

lost money as a result of Defendants' unlawful, unfair and fraudulent conduct.  Plaintiffs'

damages are the difference in the market value of the product or service in the condition in which

it was delivered and its market value in the condition in which it should have been delivered

according to the contract of the parties.  Defendants' deceptively labeled, and falsely advertised,

and misbranded product have little to no market value.

89.     Unless restrained and enjoined, Defendants will continue to engage in the above-

described conduct. Accordingly, injunctive relief is appropriate.

90.     Plaintiffs, on behalf of themselves, and all others similarly situated, and the

general public, seeks restitution and disgorgement of all money obtained from Plaintiffs and the

members of the Class collected as a result of unfair competitions, an injunction prohibiting

Defendants from containing such practices, corrective advertising, including providing

notification of the product's health risks, and all other relief this Court deems appropriate,

consistent with Florida Deceptive and Unfair Trade Practices Act.

## COUNT II

### VIOLATION OF FLORIDA INTENTIONAL
### FALSE ADVERTISING STATUTE §817.44

91.     Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1 through 77 above as if fully set forth herein.

92.     Defendants knowingly and intentionally engaged in false advertising

concerning the true nature of how Tito's Vodka is produced. Defendants' conduct was

consumer-oriented and this conduct had a broad impact on consumers at large.

93.     Defendants' actions were unlawful and under the circumstances, Defendants had actual knowledge of the falsity, or at the very least ought to have known of the falsity thereof.

94.     Fla. Stat. § 817.44 a defines "false advertising" as "invitations for offers for the sale of any property, real or personal, tangible or intangible, or any services, professional or otherwise, by placing or causing to be placed before the general public, by any means whatever, an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised."

95.     Defendants intentionally, falsely advertised that Tito's Vodka is "Handmade" in Florida and throughout the United States.

96.     As fully alleged above, by intentionally and knowingly advertising, marketing, distributing and selling mislabeled Tito's Vodka to Plaintiffs and other members of the Class who purchased this product, Defendants engaged in, and continues to engage in, false advertising in violation of Fla. Stat. § 817.44.

97.     Defendants' misleading marketing, advertising, packaging and labeling of Tito's Vodka were likely to deceive reasonable consumers.

98.     Plaintiffs and other members of the Class who purchased Tito's Vodka in Florida were deceived.

99.     Absent such injunctive relief, Defendants will continue to falsely and illegally advertise Tito's Vodka to the detriment of consumers in the state of Florida.

100.    As a direct and proximate cause of Defendants' violation of Fla. Stat. § 817.44, Plaintiffs and the members of the Class who purchased Tito's Vodka in Florida were injured when they paid good money for this illegal and worthless product.

101.    As a result of Defendants' unlawful and deceptive business practices, Plaintiffs and the members of the Class who purchased Tito's Vodka in Florida, pursuant to Fla. Stat. § 817.44, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiffs and the members of the Class who purchased Tito's Vodka in Florida any money paid for Tito's Vodka.

102.    Plaintiffs and the members of the Class are also entitled to attorneys' fees.

**COUNT III**

**BREACH OF EXPESS WARRANTY; MERCHANTABILITY;
USAGE OF TRADE PRUSUANT TO § 672.314 FLORIDA STATUTES**

103.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

104.    Plaintiffs, and each member of the Class, formed a contract with Defendants at the time Plaintiffs and the other members of the Class purchased Defendants' Vodka product. The terms of that contract include the express and implied promises and affirmations of fact made by Defendants on Tito's Vodka product's packaging and labeling, and through their marketing campaign, as described above. Defendants' Vodka product's packaging and advertising constitutes express and implied warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one end, and Defendants on the other.

105.    At all times, and as detailed above, Defendants expressly warranted that Defendants' Vodka was safe, effective and fit for use by consumers and users, including Plaintiffs and the Class, for their intended use, that they were of merchantable quality, and that the product is "handmade."

106.    Defendants breached the terms of the contract, including the warranties with Plaintiffs and the Class by selling Tito's Vodka, with the false "Handmade" representation. Defendants breached the terms of the contract, including the warranties with Plaintiffs and the Class by selling Tito's Vodka, with the false "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery" representation.

107.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendants, and upon said express warranties in purchasing Tito's Vodka.

108.    Plaintiffs and the Class purchased Defendants' Tito's Vodka without knowledge that this product is falsely represented as "Handmade" or "crafted in an old fashioned pot still."

109.    As a direct and proximate result of Defendants' breach of their contract, including the breach of express warranties with respect to Defendants' Tito's Vodka, Plaintiffs suffered injuries as set forth above, entitling Plaintiffs to judgment and equitable relief against Defendants, as well as restitution, including all monies paid for Defendants' Tito's Vodka and disgorgement of all profits Defendants gained from sales of Defendants' Tito's Vodka, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

110.    All conditions precedent to Defendants' liability under this contract, including notice, has been performed by Plaintiffs and the Class.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY PURSUANT TO UNIFORM COMMERICAL CODE §2-314 AND FLORIDA STATUTE §672.314**

111.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

112.    The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shell be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

113.    At all times, Florida has codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability. Fla. Stat. §672.314 (2013).

114.    Defendants' Tito's Vodka are "goods" as defined in the Florida's commercial codes governing the implied warranty of merchantability.

115.    As designers, manufacturers,  producers, marketers, labelers and sellers of Defendants' Tito's Vodka, Defendants are "merchants" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

116.    By placing Defendants' Tito's Vodka in the stream of commerce, Defendants impliedly warranted that Defendants' Tito's Vodka is reasonably safe and that all claims on their packaging were true, i.e. being "Handmade" and "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery."

117.    As merchants, Defendants knew that purchasers relied upon them to design, manufacture, label, and sell products that were reasonably safe and not deceptively marketed, and in fact members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendants and upon said implied warranties in purchasing Defendants' Tito's Vodka.

118.    Plaintiffs and the Class members purchased Defendants' Tito's Vodka for their intended purpose.

119.    Defendants' Tito's Vodka product's defect was not open or obvious to consumers, including Plaintiffs and the Class, who could not have known about the true nature of the production of Defendants' product.

120.    As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs and Class members have sustained injuries by purchasing Defendants' Tito's Vodka, which was not as represented, thus entitling Plaintiffs to judgment and equitable relief against Defendants, as well as restitution, including all monies paid for Defendants' Tito's Vodka and disgorgement of all profits from Defendants received from sales of Defendants' Tito's Vodka, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

**COUNT V**

**NEGLIGENCE**

121.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

122.    Defendants had a duty to represent their product accurately.  Defendants breached that duty by negligently making misrepresentations of fact and omissions of material fact to Plaintiffs and the other Class members about their Tito's Vodka product.

123.    Defendants failed to label or advertise their Tito's Vodka product in a lawful manner and violated their duties owed to consumers by purposefully or negligently engaging in the deceptive conduct described herein.

124.    Plaintiffs and the other Class members, as a direct and proximate cause of Defendants' breach of their duties, were damaged by receiving a worthless product, or at the very least, a misbranded deceptively labeled product.

125.    As described above, Defendants' actions violated a number of express statutory provisions designed to protect Plaintiffs and the Class.

126. Defendants' illegal actions constitute negligence *per se*.

127. Moreover, the statutory food labeling and misbranding provisions violated by Defendants are strict liability provisions.

128. By reason of the foregoing, Plaintiffs and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

## COUNT VI

## UNJUST ENRICHMENT

129. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

130. As a result of Defendants' fraudulent and misleading labeling, advertising, marketing, and sales of Defendants' Tito's Vodka, Defendants were unjustly enriched at the expense of Plaintiffs and the Class.

131. Defendants sold Tito's Vodka to Plaintiffs and the Class which was a product that was illegally sold, illegally misbranded, and had no economic value.

132. It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits it received from Plaintiffs and the Class in light of the fact that the product was not what Defendants purported them to be.

133. Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendants for the Vodka product at issue.

134. As a direct and proximate result of Defendants' actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated persons, pray for judgment against Defendants as follows:

A.      For an order certifying this case as a Class Action and appointing Plaintiffs and their counsel to represent the Class;

B.      That the Court adjudge and decree that Defendants have engaged in the conduct alleged herein;

C.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

D.      Ordering Defendants to engage in a corrective advertising campaign;

E.      Awarding Plaintiffs and the proposed Class members damages;

F.      Awarding restitution and disgorgement to Plaintiffs and the other Class members;

G.      Awarding Plaintiffs and the Classes punitive damages;

H.      Awarding Plaintiffs treble damages;

I.      Awarding attorneys' fees and costs; and

J.      Providing such further relief as may be just and proper.

Dated: September 25, 2014

Respectfully submitted,


*/s/ Tim Howard*
Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**HOWARD & ASSOCIATES, P.A.**

2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com

*Attorney for Plaintiffs*