UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

---

SHALINUS PYE and RAISHA
LICHT individually and on behalf
of all others similarly situated,　　　　　　JURY TRIAL DEMANDED

　　　　　　*Plaintiffs,*　　　　　　Case No. 4:14-cv-00493-RH-CAS

　　　　　　-v-

FIFTH GENERATION, INC., a
Texas Corporation; MOCKINGBIRD
DISTILLERY CORP., a Texas Corporation.

　　　　　　*Defendants.*

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT FIFTH
GENERATION, INC.'s MOTION TO DISMISS FIRST AMENDED COMPLAINT**

　　　Plaintiffs, Shalinus Pye and Raisha Licht, by and through their undersigned counsel, files this Response in Opposition to Defendant Fifth Generation, Inc.'s Motion to Dismiss First Amended Complaint, and respectfully request that this Court deny Defendant's Motion.

**INTRODUCTION**

　　　Defendant, Fifth Generation, Inc. ("Defendant") manufactures, markets, and sells vodka commonly referred to and sold as "Tito's Handmade Vodka." Tito's has become an immensely popular spirit over the last several years. Its meteoric rise in sales and profitability stems in large part from Defendant's marketing, which taps into the American public's demand for "craft" and "artisanal" spirits.[1] That is, American consumers purchase Tito's not primarily for its quality or

---

[1] *See* CBS News, "Micro-boom: U.S. craft distilleries elevating American spirits," May 3, 2012, available at http://www.cbsnews.com/news/micro-boom-us-craft-distilleries-elevating-american-spirits/.

1

taste, but because it is presented as a "Handmade" vodka. Indeed, it is not just that it labels and advertises Tito's as "Handmade," but the word "Handmade" <u>is actually in the name of the product itself</u>. As it turns out, Defendant's claim that Tito's is "Handmade" is misleading and false. Unlike actual "Handmade" spirits, Tito's Handmade Vodka is made entirely by automated machines without any input by human hands.

Plaintiffs, on behalf of a Florida class of Tito's purchasers, seek recompense for the losses they suffered as a result of Defendant's misleading and false advertising, as well as an injunction prohibiting Defendant from continuing to market its Tito's vodka as "Handmade." Defendant moves this Court to dismiss Plaintiffs' suit in its entirety for a variety of reasons.  As detailed below, Defendant's arguments are without merit and, as such, this Court is proper in denying its motion.  Simply stated, Defendant's Motion to Dismiss amounts to little more than an attempt to put before this Court its own version of the "facts" underlying this litigation. However, at this stage, it is the Plaintiffs' allegations contained in the four corners of their First Amended Complaint ("FAC") and not Defendant's assertions that carry the day.  Once Defendant's procedurally improper allegations are stripped away, the weakness of Defendant's arguments in support of dismissal become apparent.

## FACTUAL BACKGROUND

The Tito's label prominently claims that the product is "Handmade."  (¶ 2 of FAC).  The label also suggests that Tito's is "Crafted in an Old Fashioned Pot Still by America's Oldest Microdistillery."  (¶ 4 of FAC).

Tito's is actually not "Handmade" as the term would be understood by any reasonable consumer viewing the Tito's label.  First, rather than making the neutral spirit from which Tito's is made from scratch, Defendant trucks in mass produced neutral grain spirit and pumps it into

Tito's industrial facility.  A reasonable consumer would believe that a vodka purporting to be "Handmade" was produced from scratch, rather than from a mass produced neutral grain spirit.  Second, Tito's is distilled in a large industrial complex, with modern, technologically advanced stills.  A reasonable consumer would believe that the vodka purporting to be "Handmade" was produced in a still without the use of automated, technologically advanced stills.  Finally, Tito's vodka is produced and bottled in extremely large quantities.  However, a reasonable consumer would believe that a vodka purporting to be "Handmade" was produced in small batches.  (¶s 2-6 of FAC).

In April and July of 2012, Plaintiffs purchased Tito's Vodka.  (¶ 16 of FAC).  Plaintiffs purchased Tito's relying on statement that Tito's was "Handmade" on the label.  Had Plaintiffs known that Tito's was not in fact "handmade," they would have paid a lesser price for a competing product, or would not have purchased it at all.  In this regard, other purchasers of Tito's vodka have similarly relied on this deceptive labeling to their detriment.  (¶s 50-58 of FAC).

## LEGAL ARGUMENT

I. **DEFENDANT IMPROPERLY RELIES ON FACTS OUTSIDE THE COMPLAINT**

Much of Defendant's Motion to Dismiss is predicated upon assertions of fact outside the four-corners of the FAC.  Specifically, Defendant's Memorandum contains lengthy discussion concerning the supposed quality of Tito's vodka, the supposed process by which Tito's is made, and Defendant's supposed interactions with the TTB.  As Defendant should know given the exceptional quality of its counsel, "a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Auto-Owners Ins. Co. v. Ace*

*Elec. Service, Inc.*, 648 F.Supp.2d 1371, 1375 (M.D. Fla. 2009) (citing *GSW, Inc. v. Long county, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  Aside from the approved Tito's labels themselves, Defendant has not argued that any of the additional facts set forth in its Memorandum are properly before this Court.  Therefore, this Court should disregard Defendant's discussion of "facts" stemming from outside the FAC.

    **II.**    **PLAINTIFF'S MAY RELY UPON THE *FORBES* ARTICLE IN THEIR COMPLAINT.**

According to the Defendant, the only thing this Court should assume is true from the *Forbes* article is that the statements appeared in the article, and not the underlying facts.  However, in reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff.  *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

At the pleading stage a plaintiff need not put forth evidence proving his claim.  Rather, he need only allege enough facts to raise a reasonable expectation that discovery will reveal the evidence he seeks.  *See Accord Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 312 (3rd Cir. 2014) ["At the pleadings stage, it is often not possible for a plaintiff to recount with specificity to what extent a defendant was enriched by her misconduct.  That is what discovery is for."]

Defendant's suggestion that Plaintiff should not be permitted to rely on the Forbes article because it is hearsay confuses the standard for evaluating evidence and the standard for evaluating allegations in a complaint at this stage.  "Instead, the test is whether the plaintiffs have pleaded 'particular' facts that give rise to a strong inference of scienter.  To the extent that a newspaper article corroborates plaintiff's own investigation and provides detailed factual allegations, it can—at least in combination with plaintiff's investigative efforts—be a reasonable source of information and belief allegations."  *In re McKesson HBOC, Inc. Sec. Litig.*, 126

4

F.Supp. 2d. 1248, 1272 (N.D. Cal. 2000).  *See also Lewis v. Curtis,* 671 F.2d 779, 778 (3rd Cir. 1982) ("Reliance on an article in *The Wall Street Journal* is not reliance on an insubstantial or meaningless investigation.")  Defendant has not pointed to a single case suggesting that allegations based upon an investigative report in a major news publication are "conclusory" in nature.

It is irrelevant that allegations based upon an article are made "upon information and belief."  There is no requirement that the allegations in the complaint be based upon Plaintiffs' personal knowledge, rather than on information and belief.  In *In re Checkers Securities Litigation*, 858 F.Supp. 1168 (M.D. Fla. 1994), the Court recognized that "an exception exists where the Plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing.  In such cases, a complaint based on information and belief is sufficient if it includes a statement on the facts upon which the belief is based." *Id*. at 1178.  ["Defendants argue that allegations of information and belief do not satisfy the degree of particularity required under Rule 9(b).  However, because Defendants are in the best position to know what facts, if any, constitute wrongdoing and Plaintiffs allege sufficient facts as a basis for their relief, the Complaint satisfies Rule 9(b) particularity"]; see also FRCP, Rule 11(b) [plaintiffs may plead the allegations in complaints upon not only "personal knowledge," but also upon "information, and belief"].

Defendant also claims that the Forbes article merits no weight because it is based upon "erroneous conclusions formed by a reporter who seemed not to know all the facts." But again, "[f]or purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations of material fact must be taken as true." *Zazula v. Kimpton Hotels and Restaurants, L.L.C.*, 2011 WL 1741832 (S.D. Fla. 2011) (citing *Watts v.*

5

*Florida Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). Defendant's suggestion that the article is "erroneous" should be ignored. The Forbes article was published in a prestigious publication and based upon first hand investigative reporting. Allegations based upon that article should therefore be assumed true at this stage of the litigation.

### III. STANDARD FOR MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### IV. THE ALLEGATIONS FOUND IN COUNT I AND II (FDUPTA AND FLORIDA'S FALSE ADVERTISING STATUTE) OF PLAINTIFFS' FAC SATISFY RULE 9(b)'S HEIGHTENED PLEADING REQUIREMENTS

The allegations found in Count I and II of Plaintiff's FAC satisfy Rule 9(b)'s heightened pleading requirements. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") states, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Section 501.204(1). "Although not specifically identified in the statute, there are three

elements that are required to be alleged to establish a claim pursuant to the FDUTPA: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 955 F.Supp 1311 (S.D. Fla 2013). "Any person who has suffered losses as a result of a violation may commence a private action to recover actual damages, attorney's fees, and costs." *Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281, 1284 (11th Cir. 2007) (citing Fla. Stat. Section 501.211(2).

Rule 9(b) does not require a plaintiff alleging consumer fraud to enumerate each instance in which he purchased the product at issue. Defendant's unsupported claim to the contrary is frivolous and ignores existing case law.

Claims sounding in fraud must state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Fulfillment of the particularity standard requires the complaint to give defendants fair notice of the nature of the claim, notice of the grounds the claim rests on, and must be based on a reasonable belief that a wrong has been committed." *Dah Chong Hong, Ltd. V. Silk Greenhouse, Inc.*, 719 F.Supp. 1072, 1073 (M.D. Fla. 1989). "Rule 9(b) is satisfied if there is sufficient identification of the circumstances constituting fraud so an adequate answer may be prepared." *Id*.

Defendant's argument that Plaintiff's consumer fraud claims fail because Plaintiffs' allegations do not satisfy Rule 9(b)'s heightened pleading requirements is without merit. The FAC contains detailed allegations sufficient to allow Defendant to prepare an adequate defense regarding its fraudulent conduct. Specifically the FAC alleges the "who" (Defendant); the "what" (labeling Tito's "Handmade" when in fact it is not); the "how" (misleading consumers, including Plaintiffs, into purchasing a product they believe to be "Handmade" when it is not); the "where" (on the labels of Tito's); and the "when" (April and July of 2012, and during the class

7

period).  These allegations are more than sufficient to meet Rule 9(b)'s pleading requirements." *See Dah Chong Hong, Ltd. V. Silk Greenhouse, Inc.*, 719 F.Supp. 1072, 1073 (M.D. Fla. 1989). ["Rule 9(b) is satisfied if there is sufficient identification of the circumstances constituting fraud so an adequate answer may be prepared."]

Despite the fact that Plaintiffs specifically alleged that they purchased Tito's in April and July of 2012, Defendant suggests that the Plaintiffs have failed to adequately allege "when" the Tito's was purchased, because they do not know how often Plaintiffs purchased Tito's Handmade Vodka.  But Rule 9(b) does not require a plaintiff alleging consumer fraud to enumerate each instance in which he purchased the product at issue.   Defendant's unsupported claim to the contrary is frivolous.  Indeed, by pleading the specific month in which he last purchased the product, Plaintiff has done more than is required under Rule 9(b).

Specifically, as way of example, in *Feiner v. Innovation Ventures LLC,* 2013 WL 2386656 (S.D. Fla. 2013), the Court found that the plaintiff's allegations that he purchased a 5-hour ENERGY drink instead of another similar product in reliance on defendant's deceptive representations, would not have purchased the 5-hour ENERGY had he known that the representations were false, and had been damaged in the amount of the difference between the premium price paid for the product and the price they would have paid had they known that the product was not fit when consumed was sufficient to allege causation and damages under FDUTPA.  *Id*. at *3.  Similarly, in the case at hand, Plaintiffs have alleged in their FAC that they purchased Defendant's product instead of other similar products in reliance on Defendant's deceptive representations (¶ 58); they would not have purchased the Defendant's product if they had known the representations on the label were false (¶ 50); and they have been damaged in the amount of the difference between the premium price paid for the product and the price they

would have paid for a similar product had they known of Defendant's deception at the time of purchase (¶ 57) is sufficient to allege a deceptive act or unfair practice, causation and damages under FDUTPA.

In moving to dismiss Count II, Defendant argues that Plaintiffs' claims must fail as a matter of law because it fails to set forth the "what" – namely, the precise advertising they are complaining about. Nevertheless, the Defendant subsequently concedes that the Tito's Handmade vodka label's reference to "Handmade" is referenced by the Plaintiff in the Amended Complaint, thus setting forth the "what" requirement. Furthermore, in ¶s 2-6 of the FAC, Plaintiffs allege, with specificity, that they purchased Tito's vodka under the false impression that Defendant's product was "Handmade" and "Crafted in an Old Fashioned Pot Still by America's Original Microdistillery," as depicted in large prominent letters on the label of said product, satisfying Rule 9(b)'s "what" requirement.

## V. THE SAFE HARBOR PROVISION FOUND IN FDUTPA IS INAPPLICABLE TO THE CASE AT HAND.

Defendant further argues that this Court should dismiss the Plaintiffs' FDUTPA claim (Count I) because TTB has approved the labels on their products and therefore, Florida's safe harbor provisions immunize them from liability. Defendant cites to 27 C.F.R. §§ 5.34(a) and 5.42(a) for alcohol labeling requirements. 27 C.F.R. § 5.34(a) states:

> No label shall contain any brand name, which, standing alone, or in association with other printed or graphic matter, creates any impression or inference as to the age, origin, identity, or other characteristics of the product unless the appropriate TTB officer finds that such brand name (when appropriately qualified if required) conveys no erroneous impressions as tot eh age, origin, identity, or other characteristics of the product.

27 C.F.R. § 5.42(a)(1) states:

> Bottles containing distilled spirits, or any labels on such bottles, or any individual covering, carton, or other container of such bottles used for sale at retail, or any

> written, printed, graphic, or other matter accompanying such bottles to the consumer shall not contain … [a]ny statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression.

Defendant then argues that Congress has delegated to the TTB the function of reviewing and approving labels on alcoholic beverage products before they are even allowed to leave the bottling facility, much less become available for purchase by consumers. Defendant also asserts that the TTB approved the precise element of Fifth Generation's labels at issue in the Amended Complaint.

At the outset, it should be noted that "the defendant bears the burden of establishing the applicability of the safe harbor provisions." *Marty v. Anheuser-Busch Companies, LLC*, 2014 WL 4388415, *8 (S.D. Fla. 2014). Moreover, the "safe harbor" defense only bars claims when a statute or regulation SPECIFICALLY permits the allegedly deceptive practice in question (which is not the case here).

In *Marty*, the Court rejected the argument that Defendant is making (they are immune from liability as their label was approved by the TTB); holding that "the defendant has not shown that the TTB's approval of the labels on Beck's triggers the safe harbor provisions of the relevant state (Florida and New York) law consumer protection statutes." *Id.* It would contravene public policy to immunize an alcohol manufacturer from consumer fraud suits because the labels of its products had been approved by the TTB. Unlike, for example, FDA's "rigorous" pre-approval process for drugs, *Whitaker v. Thompson*, 248 F. Supp. 2d 1, 3 (D.D.C. 2002), TTB's approval of alcohol labels hinges on self-reporting. As the labels submitted by Defendant demonstrate, TTB bases its approval of liquor labels on the affirmation of applicants that "the representations on the labels attached to the [applications for and certification/exception

of label/bottle approval] . . . truly and correctly represent the content of the containers to which these labels will be applied." In other words, TTB's approval of Defendant's labeling of Tito's as "Handmade" demonstrates nothing more than that Defendant repeatedly affirmed to TTB that its vodka is truly handmade. It does not suggest that had TTB known the process by which Tito's was actually made, it would have concluded that Defendant's label complied with federal law.[2]

Defendant argues that any action taken by federal agents pursuant to federal regulation is enough to apply the "safe harbor" defense. Again, this is a radical expansion of the defense. The "safe harbor" defense does not apply to federal actions which does not rise to the level of federal law, much in the same way as preemption. *See In re Horizon Organic milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 955 F.Supp.2d 1311, 1347. ("The FDA's statement that "[b]ased on the information [WhiteWave has] provided, [the FDA] *would not object at this time to the DHA claims* regarding brain and eye health … does not constitute approval of WhiteWave's brain health representations by the FDA. Moreover, even if the letter could be construed as approval, statements made by the FDA in a letter to a corporation about its products are insufficient to accord those statements the weight of federal law to invoke the safe harbor provisions of the consumer fraud statute.") (*Emphasis in original*).

Defendant fails to direct the Court to any authority supporting its position that the issuance of a Certificate of Label Approval ("COLA") rises to the level of federal law as to justify the application of the "safe harbor" defense. In fact, contrary to Defendant's assertions, the TTB has made clear that an "approval" of a label does not mean the label is in "compliance"

---

[2] Defendant suggests that TTB's approval of its label was based not simply on Defendant's representations to TTB, but also on an "in person review" conducted by TTB agents. This is a factual assertion from outside the four-corners of the Complaint that Defendant is precluded from making at this stage. Plaintiffs actually challenge the veracity of this statement, but regardless, even if this Court were to assume the truth of Defendant's assertion (it should not), Florida's safe harbor would still be inapplicable for the reasons set forth above.

with all TTB regulations. The TTB's mission is to protect the public which includes ensuring that labels on alcohol beverages contain adequate descriptive information and are not likely to mislead consumers. Established in 2008, TTB's Alcohol Beverage Sampling Program (ABSP) is a random survey of products in the marketplace to evaluate the success in meeting this mission and to determine where compliance issues exist. [3] Each year the TTB conducts the ABSP by purchasing products from the marketplace and brings them to their offices for label assessments to determine if products are in compliance with its own labeling regulations. Following the label assessments, the TTB sends the products to their laboratories to undergo a series of analyses to determine compliance with certain information displayed on the product labels. *Id.*

In 2014, the TTB selected 190 distilled spirits, 155 malt beverages, and 105 wines for the 2014 ABSP, with 450 total products included in the survey. After analyzing these products, the TTB found 139 products that were non-compliant. By commodity, the TTB found that 73 distilled spirits products, 46 malt beverage products, and 20 wine products were non-compliant with current TTB regulations, even though these labels were initially "approved" by the TTB. [4]

In 2013, the TTB selected 275 distilled spirits, 239 malt beverages, and 154 wines for the 2013 ABSP, with 668 total products included in the survey. After analyzing these products, the TTB found 190 products that were non-compliant. By commodity, the TTB found that 80 distilled spirits products, 73 malt beverage products, and 37 wine products were non-compliant, even though these labels were initially "approved" by the TTB. [5]

In 2012, the TTB selected 246 distilled spirits, 206 malt beverages, and 196 wines for the 2012 ABSP, with 642 total products included in the survey. After analyzing these products, the

---

[3] http://ttb.gov/sampling/index.shtml
[4] http://ttb.gov/pdf/2015-01-07-fy2014-results.pdf
[5] http://ttb.gov/pdf/2014-02-10-fy2013-results.pdf

TTB found 158 products that were non-compliant. By commodity, the TTB found that 85 distilled spirits products, 40 malt beverage products, and 33wine products were non-compliant, even though these labels were initially "approved" by the TTB. [6]

In sum, FDUTPA's safe harbor provision protects companies from consumer fraud suits resulting from attempts to comply with other state and federal laws.  It does not protect companies who receive the blessing of regulators by misrepresenting the veracity of their products' labels.  Accordingly, FDUTPA's safe harbor provision does not immunize Defendant's deceptive labeling.

### VI.   "Handmade" Is Not Non-Actionable Puffery.

Defendant actually does not contend that "Handmade" constitutes non-actionable puffery but Plaintiff is compelled to discuss why Defendant presumably did not make such an argument. "Puffery is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable …" *BellSouth Advertising & Pub. Corp. v. Lambert Pub.*, 45 F.Supp.2d 1316, 1320 (S.D. Ala. 1999).  "Vague or highly subjective claims of product superiority generally will fall within the category of non-actionable puffery." *Id*.  "But, false descriptions of specific or absolute characteristics of a product and specific, measurable claims of product superiority based on product testing are not puffery and are actionable." *Id.*  Unlike other "puffery" cases, the term "Handmade" is not an "exaggerated, blustering" statement that could not reasonably be construed to have specific meaning.  Nor is it a generalized claim of superiority.  Rather, this is a specific claim about the method by which the product at issue is made: a "Handmade" product is made by hand, rather than by machine.  Therefore, the term "Handmade" does not constitute non-actionable puffery. *Louis Altman and Malla Pollack,*

---

[6] http://ttb.gov/pdf/2012absp-results.pdf

*Callman on Unfair Competition, Trademarks and Monopolies,* § 5:42 (4th ed.) ["If the desirability of a product depends on the process by which it is manufactured, any false or misleading statement concerning that process inevitably involves a misleading representation with respect to quality."].

Moreover, Defendant's argument is similar to the argument unsuccessfully made by the defendant in *Garcia v. Kashi Co.*, 2014 WL 4392163 (S.D. Fla. 2014). There, a plaintiff alleged that the defendant's labeling of its products as "All Natural" was deceptive and misleading, because it led reasonable consumers to believe that sythentic ingredients would not be included in their "All Natural"—labeled food. The defendant countered that the FDA permits "natural" foods to contain synthetic ingredients and processing aids as long as they are normally expected in the food. Rejecting the defendant's argument, the court explained that:

> The Court must take all of these well-pleaded allegations as true and draw all reasonable inferences therefrom in the light most favorable to Plaintiffs. *See Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.*, 500 F.3d 1293, 1295 (11th Cir. 2007). And, assuming without deciding the FDA policy permits synthetic ingredients to be labeled "natural" so long as they are normally expected in food, the Court agrees with Plaintiffs that the SAC sufficiently alleges that a reasonable consumer would not expect Pridoxine Hydrochloride, Alpha-Tocopherol Acetate, Hexane-Processed Soy ingredients and Calcium Panthothenate in their "All Natural"-labeled food. *Id.* at *11.

Similarly, this Court should reject Defendant's attempt to impose its own definition of "Handmade." How a reasonable consumer would construe the term "Handmade" cannot be resolved without discovery and/or expert testimony.

Finally, assuming, *arguendo*, that there is no such thing as "Handmade" vodka, this would not defeat Plaintiff's claim because an advertisement may mislead a reasonable consumer even if those with specialized knowledge would see through the advertisement's claims. *See Louis Altman and Malla Pollack, Callman on Unfair competition, Trademarks and Monopolies, § 5:17 (4th ed.)* [explaining that "[t]he purchaser is not duty bound to suspect or discredit the

advertiser's claims"]. Defendant has not—and at this stage cannot—show that the reasonable vodka consumer would have reason to know its vodka could not actually be "Handmade," irrespective of how other vodkas are made.

### VII. Other Portions of the Label Do Not Preclude the Reasonable Consumer from Believing Tito's is "Handmade."

In addition to arguing that Plaintiff's claim should fail because vodka cannot be "Handmade," Defendant asserts that language on the Tito's bottle—including small print on the back label—discloses precisely what Defendant means by the term "Handmade" with respect to the process of making Tito's Handmade Vodka. Plaintiffs disagree.

First, while it is true that Tito's label also states (falsely) that Tito's is crafted in an Old Fashioned Pot Still, Defendant fails to explain why a reasonable consumer would assume that this statement narrowed Tito's assertion that it was "Handmade." Nothing on the front or back label suggests that one claim modifies the other.

Second, this Court should reject Defendant's suggestion that small print on the back of the Tito's bottle somehow modifies its use of the term "Handmade," which appears not only in large font on the front label, but also in the name of the product itself. Indeed, in *Marty v. Anheuser-Busch Companies, LLC,* 2014 WL 4388415 (S.D. Fla. 2014), the Court rejected a similar attempt to use small print on a package's periphery to immunize deceptive content on the front of the package. ["In sum, the undersigned finds that the "Product of USA" disclaimer on the label and the statement "BRAUEREI BECK & CO., BECK'S © BEER, ST. LOUIS, MO" underneath the carton do not warrant the dismissal of the plaintiffs' state law consumer protection claims."] *Id*. at *5.

Finally, even if a reasonable consumer would assume that "Handmade" simply means "crafted in an old fashioned pot still," this does not save Defendant because Plaintiffs

15

specifically allege that Defendant's claim that Tito's is crafted in an "old fashioned" pot stills is, at the very least, misleading. According to the FAC, Tito's is distilled in a large industrial complex with modern, technologically advanced stills. (¶ 2 of FAC). Defendant's claim to the contrary is irrelevant. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007). ["Under rules of procedure that have been settled …. a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint"].

### VIII. PRIVITY IS NOT A REQUIREMENT FOR PLAINTIFFS' BREACH OF WARRANTY CLAIMS. FURTHERMORE, ALL STATUTORY NOTICE REQUIREMENTS HAVE BEEN SATISFIED.

Defendant next argues that Plaintiff's breach of express warranty (Count III) and implied warranty (Count IV) should be dismissed because there is no privity. Specifically, Plaintiff argues that Florida law requires privity of contract with the defendant in order to recover on express and implied warranty claims. However, case law in Florida holds that an express warranty can be conferred to the ultimate user of the product – either in written form or by direct assurances from the manufacturer/supplier – regardless of technical privity.

Florida has long recognized that a person to whom an express warranty is conferred upon is entitled to enforce that warranty against that warrantor. *See Cedars of Lebanon Hospital Corp. v. European X-Ray Distrivutors of America, Inc.*, 444 So. 2d 1068 (Fla. 3d DCA 1984); *Cf. Moto Homes of America, Inc. v. O'Donnell*, 400 So. 2d 422 (Fla. 4th DCA 1983) (citing Magnusson-Moss Warranty Act at 15 U.S.C.A. 2310(f)).

Additionally, in *Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336 (S.D. Fla. 2009), a case highly analogous to the case at bar, Judge Cohn concluded that the plaintiff's claim for breach of express warranty survived the defendant's motion to dismiss, despite the absence of privity. *Id*. at 1343. In reaching such a finding, the Court found it significant that the express

16

warranty the manufacturer allegedly breached is contained on the packaging of Eclipse gun. *Id*. Similarly, the express warranty Defendant breached in the matter before this Court, that their vodka is "Handmade," is contained on the packaging of Defendant's vodka.

Furthermore, Plaintiffs have adequately stated a claim for breach of implied warranty as Defendant's products were defective and unsuitable for its intended purpose. Defendant knew, or should have known, that the deceptive practices alleged herein would lead a reasonable consumer to purchase these products under false pretense, for the intended purpose of providing consumers with "Handmade" vodka.

Defendant further argues that the Plaintiffs' breach of warranty claims must fail for failing to allege that they gave proper statutory notice to the seller prior to filing suit. In fact, such an allegation was made in ¶ 110 of the FAC, in which Plaintiffs asserted that "All conditions precedent to Defendants' liability under this contract, including notice, has been performed by Plaintiffs and the Class."

## IX. PLAINTIFFS' NEGLIGENCE CLAIM PROPERLY ASSERTS THE DUTY OWED BY THE DEFENDANT THAT WAS BREACHED.

Defendant alleges that Plaintiffs' negligence claim (Count V) is deficient because Plaintiffs have not alleged an independent duty that gives rise to a negligence claim. In fact, in ¶ 122 of the FAC, Plaintiffs assert that "Defendants had a duty to represent their product accurately …" In alleging that Defendants have a duty to represent their product accurately, Plaintiffs have plead a duty that that gives rise to a negligence claim.

"To state a cause of action for negligent misrepresentation in Florida, a Plaintiff must allege: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the

plaintiff to rely … on the misrepresentation; and (4) injury resulted to the plaintiff in justifiable reliance upon the misrepresentation." *McGee v. JP Morgan Chase Bank, NA,* 520 Fed.Appx. 829, 831 (11th Cir. 2013).

This Court should find that the Plaintiffs have stated a claim for negligence with respect to the "Handmade" representations on the labeling of Defendant's product.  With respect to the first two prongs, construing the inferences drawn from the FAC's factual allegations in the light most favorable to the Plaintiffs, the Court should find that the Defendants made a false misrepresentation of fact that they should have known was false.  (¶ 2 FAC states: "Through unlawful, deceptive and unfair trade practices, and false advertising market, Defendants manufactured, marketed, and/or sold their "handmade" Vodka to consumers with the false representation that the Vodka was handmade … [t]here is simply nothing "handmade about the Vodka, under any definition of the terms …).

With respect to the third prong, the Plaintiffs sufficiently allege that Defendant intended to induce the Plaintiffs to rely on the misrepresentation in ¶ 25 of the FAC.  (¶ 25 of the FAC states: "Defendants knowingly and intentionally sold this misbranded product to consumers (including Plaintiffs) with the intent to deceive them").

With respect to the fourth prong, the Plaintiffs sufficiently allege that injury resulted to the Plaintiffs acting in justifiable reliance upon the misrepresentation in ¶ 62 of the FAC.  (¶ 62 of the FAC states: "Plaintiffs suffered an 'injury in fact' because Plaintiff's money was taken by Defendant as a result of Defendants' false claims set forth on the offending product.  Furthermore, they suffered an 'injury in fact' by paying a premium for a product believed to be genuinely "Handmade," when it was not…").  *See Garcia v. Kashi Co.*, 2014 WL 4392163 (S.D. Fla. 2014), in which similar allegations found in the Plaintiff's Second Amended Complaint

were found to sufficiently allege a negligence claim with respect to the representations made on the label of Defendant's product.

X. **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' UNJUST ENRICHMENT IS WITHOUT MERIT, AS A CLAIM FOR UNJUST ENRICHMENT HAS BEEN SUFFICIENTLY PLED.**

Defendant's argument that Plaintiffs' sixth cause of action for unjust enrichment is deficient is without merit. In *Feiner, supra*, the Court held that the plaintiff's allegations that "(1) Plaintiff and Class members directly conferred a benefit on Defendant by purchasing 5–hour ENERGY® at a premium price; (2) Defendant accepted and retained the benefit in the amount of the profits it earned from sales to Plaintiff and Class members; and (3) Defendant has profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit ... establish each element of a claim for unjust enrichment." *Feiner*, 2013 WL 2386656, at *5.

In the case at hand, all elements of a claim for unjust enrichment have been pled in Plaintiffs' FAC, and can be found in ¶ 58 of the FAC.

Defendant further argues that Plaintiffs' unjust enrichment claim must be dismissed because Plaintiffs have adequate remedies at law under the FDUTPA. Dismissal, however, is not warranted. The general rule that equitable remedies are not available under Florida law when adequate legal remedies exist does not apply to unjust enrichment claims. *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998). What is more, "the Federal Rules do not prohibit the pleading of an equitable remedy alongside a claim for monetary remedy." *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999); *see* Fed. R. Civ. P. 8(a). Courts, accordingly, have allowed plaintiffs to assert claims for "money

had and received" under Florida law – which is an equitable doctrine that is "treated the same (and requires the same showing)" as a claim for unjust enrichment – along with FDUTPA and warranty claims.  *Garcia v. Kashi Co.*, 2014 WL 4392163, at *24 (S.D. Fla. 2014).

### XI. IN THE ALTERNATIVE, DEFENDANT REQUESTS LEAVE TO AMEND

Alternatively, should this Court find persuasive any of Defendant's arguments, Plaintiff respectfully requests leave to amend the FAC to cure any such perceived deficiencies.  As this Court is well aware, leave to amend should be "freely given" when the plaintiff could cure the pleading defects and present viable claims.  Fed. R. Civ. P. 15(a); *Forman v. Davis*, 371 U.S. 178, 182 (1962).

### XII. CONCLUSION

In sum, this Court should deny Defendant's motion to dismiss. Alternatively, Plaintiff respectfully requests that this Court grant leave to amend the FAC to cure any deficiencies otherwise warranting dismissal.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 11, 2015, I filed the forgoing with the Clerk of Court through the CM/ECF system which automatically sends electronic mail notification of such filing to the CM/ECF registered participants as identified on the Electronic Mail Notice List.

               */s/ Tim Howard*  
               Tim Howard, J.D., Ph.D.  
               Florida Counsel for the Plaintiff:  
               Florida Bar No.: 655325  
               Howard & Associates, P.A.  
               2120 Killarney Way, Ste. 125  
               Tallahassee, FL 32309  
               (850) 298-4455  
               tim@howardjustice.com