IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


SHALINUS PYE et al.,

      Plaintiffs,

v.                                   CASE NO. 4:14cv493-RH/CAS

FIFTH GENERATION, INC.,
etc., et al.,

      Defendants.

_____/


**ORDER DENYING THE MOTION TO DISMISS
THE EXPRESS-WARRANTY CLAIM AND
<u>DISMISSING ALL OTHER CLAIMS</u>**


      The defendants manufacture Tito's Handmade Vodka. The plaintiffs are consumers who assert they bought Tito's in reliance on the statement on the label that Tito's is "handmade" and made in "an old fashioned pot still." The plaintiffs assert six claims, all based on the assertion that these statements are false or misleading.

      In *Salters v. Beam,* No. 4:14-cv-659-RH/ (N.D. Fla. May 1, 2015) (unpublished order), I addressed a similar claim against the manufacturers of Maker's Mark bourbon. Much of the analysis here repeats what was said there.

Case No. 4:14cv493-RH/CAS

This order denies the motion to dismiss the plaintiffs' express-warranty claim but dismisses the other claims.

I

The Supreme Court has set out the standards governing a motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp.*, *supra*, at 555-556 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

*Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court must accept the complaint's allegations as true "even if [the allegations are] doubtful in fact." *Twombly*, 550 U.S. at 555.

A complaint thus "does not need detailed factual allegations." *Id*. Nor must a complaint allege with precision all the elements of a cause of action. *See Swierkiewicz*, 534 U.S. at 514-15 (rejecting the assertion that a Title VII complaint could be dismissed for failure to plead all the elements of a prima facie case). But neither is a conclusory recitation of the elements of a cause of action alone sufficient. A complaint must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555. A complaint must include "allegations plausibly suggesting (not merely consistent with)" the plaintiff's entitlement to relief. *Id*. at 557. The complaint must set out facts—not mere labels or conclusions—that "render plaintiffs' entitlement to relief plausible." *Id*. at 569 n.14.

A district court thus should grant a motion to dismiss unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is so because

> the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

*Id*. at 678-79.

II

The first amended complaint includes a long recitation of facts, conclusions, and legal arguments. The essential factual allegations are these: the Tito's label says the vodka is "handmade" and made in "an old fashioned pot still"; the plaintiffs bought bottles of Tito's because of these statements; Tito's is not made by hand but is instead manufactured with large machines in a highly mechanized process; and Tito's is not made in an old-fashioned pot still.

Based on these allegations, the plaintiffs—two individuals who bought bottles of Tito's at local liquor stores—seek to represent a class of all Florida retail purchasers of Tito's. They seek compensatory and perhaps also punitive damages as well as injunctive relief. The plaintiffs put compensatory damages at the full price they paid for the vodka.

The first amended complaint asserts six claims: violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201–501.213; bait-and-switch advertising in violation of Florida Statutes § 817.44; breach of express warranty; breach of implied warranty; negligence; and unjust enrichment.

The defendants are Fifth Generation, Inc. and Mockingbird Distillery Corporation. They have moved to dismiss all the claims.

### III

The plaintiffs' claims all rest in the first instance on the assertion that the "handmade" and "old fashioned pot still" statements are false or misleading.

As the plaintiffs correctly assert, whether a statement is false or misleading is ordinarily a question of fact. But if a reasonable juror could not find a statement false or misleading—if a complaint's factual allegations do not "render plaintiffs' entitlement to relief plausible," *Twombly*, 550 U.S. at 569 n.14—then a motion to dismiss for failure to state a claim should be granted. The Eleventh Circuit so held in *Kuenzig v. Hormel Foods Corp.*, 505 Fed. App'x 937 (11th Cir. 2013)

(alternative holding), affirming the dismissal of false-labeling claims because the challenged labels were not false or misleading.

The term "handmade" goes back many years. The original meaning was "distinguished from the work of nature." *Oxford English Dictionary* 1251 (9th ed. 1971). In that sense all vodka is handmade; vodka, unlike coffee or orange juice, cannot be grown in the wild.

But the term "handmade" is no longer used in that sense. The same dictionary now gives a circular definition: "handmade" means "[m]ade by hand." *Id*. But the term obviously cannot be used literally to describe vodka. One can knit a sweater by hand, but one cannot make vodka by hand. Or at least, one cannot make vodka by hand at the volume required for a nationally marketed brand like Tito's. No reasonable consumer could believe otherwise.

Understandably, then, the plaintiffs have not asserted that "handmade," in this context, means literally made by hand. They have offered other possible meanings, including made from scratch or in small units. Against those claims, the defendants say that Tito's is made using human effort to determine when to make beginning and ending quality cuts in each batch, and that this human involvement is what distinguishes Tito's from other vodkas that are produced using continuously run column stills. The plaintiffs have alleged no contrary facts.

No reasonable person would understand "handmade" in this context to mean literally made by hand. No reasonable person would understand "handmade" in this context to mean substantial equipment was not used. If "handmade" means in a carefully monitored process, then the plaintiffs have alleged no facts plausibly suggesting the statement is untrue. If "handmade" is understood to mean something else—some ill-defined effort to glom onto a trend toward products like craft beer—the statement is the kind of puffery that cannot support claims of this kind.

So the defendants' use of the term "handmade," standing alone, would not be sufficient to support the plaintiffs' claims. This conclusion lines up with the holding in *Salter*.

The same is not true, though, of the statement that the vodka is made in an "old fashioned pot still." The plaintiffs plausibly allege that this statement is simply false. The defendants disagree.

This is not the kind of dispute that can properly be resolved on a motion to dismiss. Perhaps the vodka is made with equipment that can reasonably be described as an "old fashioned pot still"; perhaps not. Just from reading the first amended complaint and motion to dismiss, one cannot know. And while the term "handmade," standing alone, would not support a claim, the use of the term is not

irrelevant to the claim based on the statement that the vodka is made in an "old fashioned pot still."

In sum, the plaintiffs have adequately alleged that the Tito's label is false or misleading.

IV

The plaintiffs first assert a claim under the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201–501.213.  The Act prohibits a wide range of deceptive practices, including selling goods with false or misleading labels.  *See id.* § 501.204.  But the Act includes a safe-harbor provision: the Act "does not apply to . . . an act or practice required or specifically permitted by federal or state law."  *Id.* § 501.212(1).  The safe-harbor provision applies to acts that are required or permitted not only by statutes but also by regulatory action.  *See, e.g.*, *State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005); *Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. 3d DCA 2007).

The Federal Alcohol Administration Act regulates the distribution of distilled spirits, including vodka.  The Act allows introduction of distilled spirits into interstate commerce only in compliance with regulations that govern labeling and packaging.  *See* 27 U.S.C. § 205(e).  The Secretary of the Treasury is charged with promulgating regulations that will "prohibit, irrespective of falsity, such

statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Secretary of the Treasury finds to be likely to mislead the consumer." *Id*. The regulations are found at 27 C.F.R. Subchapter A, Part 5, "Labeling and Advertising of Distilled Spirits." The Alcohol and Tobacco Tax and Trade Bureau, known as the "TTB," enforces the regulations.

The regulations forbid the movement of spirits in interstate commerce unless the bottles are labeled in conformity with the regulations. The regulations forbid any statement on a label "that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." 27 C.F.R. § 5.42(a).

The TTB enforces these provisions in a number of ways, chiefly through requiring alcohol labels to have a valid Certificate of Label Approval ("COLA"). Before issuing a COLA, the TTB evaluates and preapproves an alcohol label to ensure it contains all mandatory information and contains no prohibited information. The TTB uses field investigators to police compliance with the labeling standards. This can result in the revocation of a COLA.

The TTB has expressly approved the Tito's label. The plaintiffs acknowledge that Tito's has a valid COLA. But the plaintiffs point to the high levels of noncompliance found by the TTB during annual audits of labels in the

industry; the plaintiffs say the system is not protecting consumers.  Even if this is so—a question that cannot be resolved on this record—it would not matter.  The relevant question in applying the Florida safe-harbor provision is not whether the governing federal or state law is wise or whether a federal or state regulator has done its job well or poorly.  The safe harbor applies to *any* "act or practice required or specifically permitted by federal or state law."  Fla. Stat. § 501.212.  There is no exception for unwise or even incompetently enforced federal or state laws.

In sum, the TTB, a regulator charged with ensuring that the representations on the Tito's label are not misleading, has approved the use of the terms "handmade" and "old fashioned pot still."  The use of these terms is specifically permitted by federal law within the meaning of Florida Statutes § 501.212.  The plaintiffs have failed to state a claim on which relief can be granted under the Florida Deceptive and Unfair Trade Practices Act.

V

The plaintiffs next assert a claim under a Florida statute that prohibits bait-and-switch advertising.  The statute prohibits a person from offering to sell property or services with the intent either not to sell the property or services at all or to sell them at a different price than advertised.  Thus the statute prohibits offering to sell property or services through an advertisement "with the intent not to sell such property or services so advertised, or with the intent not to sell such

property or services at the price at which it was represented in the advertisement to be available for purchase by any member of the general public." Fla. Stat. § 817.44(1).

This is not what the plaintiffs allege happened. Quite the contrary. The plaintiffs allege that they successfully purchased Tito's. The plaintiffs do not allege that anyone failed to sell them the product or that they were required to pay more than any advertised price. The plaintiffs say only that they did not get what they thought they were getting—vodka that was handmade in an old-fashioned pot still. But by its plain terms, the bait-and-switch statute does not apply to misrepresentations of this kind. *See, e.g.*, *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 497 (Fla. 4th DCA 2001) (alternative holding).

The plaintiffs have failed to state a § 817.44 claim on which relief can be granted.

VI

The plaintiffs next assert an express-warranty claim. To successfully state such a claim, a plaintiff must allege (1) the sale of goods; (2) an express warranty; (3) breach of that warranty; (4) notice to the seller of breach; and (5) injuries to the buyer as a result of the breach. *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011).

The plaintiffs have alleged all of these elements. The first amended complaint alleges that (1) the plaintiffs purchased Tito's vodka, (2) the defendants warranted that the vodka was handmade in an old-fashioned pot still, (3) Tito's is not handmade or made in a pot still, (4) the plaintiffs gave notice, and (5) the plaintiffs suffered harm, paying for a product they would not have bought if told the truth.

As set out above, the representation that Tito's is "handmade," without more, would be insufficient to support the plaintiffs' claim. But the plaintiffs also allege that Tito's is not made in "an old fashioned pot still." If this is so, it is contrary to the express assertion on the Tito's label. The plaintiffs have stated an express-warranty claim on which relief can be granted.

VII

The plaintiffs also assert a claim for breach of implied warranty. Unless a seller modifies or excludes the warranties, a seller impliedly warrants that its goods are merchantable and fit for the ordinary purpose for which such goods are used. Fla. Stat. § 672.314. So by selling Tito's vodka, the defendants warranted that the vodka was of merchantable quality and fit to drink as vodka.

The plaintiffs do not allege that the defendants' vodka failed to meet these warranties. Instead, the plaintiffs say the vodka was not handmade or made in an old-fashioned pot still. But any warranty along these lines was express, not

implied. Had the defendants made no express statements on these subjects, no warranty of this kind would exist.

The plaintiffs have failed to state an implied-warranty claim on which relief can be granted.

### VIII

The plaintiffs next assert a claim for common-law negligence. Negligence claims ordinarily extend to personal injury, physical damage to property, and professional services. With exceptions not applicable here, a negligence claim cannot go forward based only on economic harm of the kind now at issue. This is sometimes explained as the "economic-loss rule." *See, e.g.*, *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1335 (S.D. Fla. 2013).

The plaintiffs have failed to state a negligence claim on which relief can be granted.

### IX

The plaintiffs' claim for unjust enrichment fails because an express contract exists that controls the parties' relationship. Recovery for unjust enrichment sounds in quasi-contract—it operates to restore funds to their rightful owner when no express contract exists. *See, e.g.*, *Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997). The plaintiffs acknowledge that a contract existed that governed their relationship with the defendants. Indeed, that

contract is the basis for the plaintiffs' claims for breach of warranty.  *See, e.g.*, *Atlantic Estate Acquisitions, Inc. v. DePierro*, 125 So. 3d 889, 893-94 (Fla. 4th DCA 2013).  Because an express contract existed, the plaintiffs cannot recover for unjust enrichment.

X

For these reasons,

IT IS ORDERED:

1.  The motion to dismiss, ECF No. 25, is granted in part and denied in part. The first amended complaint's express-warranty claim (count 3) is not dismissed. All other claims are dismissed with prejudice.

2.  I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

SO ORDERED on September 23, 2015.

s/Robert L. Hinkle<br>United States District Judge